J-S46016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| IN THE INTEREST OF: Z.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: O.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1090 WDA 2025 |

Appeal from the Order Entered August 5, 2025
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000053-2024

BEFORE: BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:            **FILED: March 26, 2026**

Appellant O.W. (Mother) appeals from the order granting the petition filed by the Allegheny County Office of Children, Youth and Families (CYF) to terminate Mother's parental rights to her child, Z.D. (Child). On appeal, Mother claims that there was insufficient evidence to establish grounds for termination and that termination best served Child's needs and welfare. We affirm.

By way of background, Child was born prematurely in March of 2022 with serious medical conditions affecting her ability to sleep, ability to feed, and cardiac functioning. *See* Trial Ct. Op. at 2, 9 (unpaginated). On March 30, 2023, CYF took emergency custody of Child after her physician detected that she had "lost a lot of weight," Mother had failed to send Child to medical daycare because she had family visiting from Florida, and Mother did not provide the required number of gastronomy tube (G tube) feedings for Child

to thrive. *Id.* at 2-3 (citations omitted); *see also* N.T., 8/1/25, at 32.[1] Child was adjudicated dependent on September 22, 2023 and, around the same time, was placed in foster care with H.G. and C.G. (collectively, Foster Parents). *See* Trial Ct. Op. at 2, 5.

CYF filed to terminate Mother's parental rights on June 5, 2024. *Id.* at 2. On February 16, 2025, the trial court entered an order of aggravated circumstances based on the "lack of consistent contact between Mother and [Child], Mother's lack of progress with any of the court-ordered goals, and Mother's failure to relieve any of the circumstances that bought [Child] into CYF's care." *Id.* at 8 (footnote omitted). A termination of parental rights (TPR) hearing was held on August 1, 2025. *Id.* at 2.

At the TPR hearing, CYF presented testimony from Ms. Stewart; Zoe Noss, foster care coordinator; Turquoise Vaughn, caseworker; Dr. Michelle Watkinson, Child's treating physician; and Dr. Gregory Lobb, psychologist. Ms. Stewart testified that Mother had been ordered to continue to be trained on how to administer medications and G tube feedings to Child, participate in in-home services, participate in supervised visits with Child at least twice a week, participate in a psychological evaluation, engage in individual therapy and follow any subsequent therapeutic recommendations, attend Child's

---

[1] Specifically, casework supervisor Carrie Stewart testified that Mother "had explained that during that week . . . that she had family from Florida that was visiting and so she did not send [Child] to the medical daycare. So in turn [Mother] was preparing all the feedings for [Child]. She had acknowledged that she was not preparing the feedings accurately." N.T., 8/1/25, at 32.

medical appointments, engage in testing related to Child's genetic disorder, and provide CYF with her work schedule so that the agency could schedule visitations. *See* N.T., 8/1/25, at 33-34; *see also* Trial Ct. Op. at 4, 7-8.

Testimony from Ms. Stewart, Ms. Vaughn, and Ms. Noss collectively conveyed that Mother did not engage with training to stay up-to-date on how to administer Child's evolving medication or feeding requirements, attended nine out of the eighty-two offered supervised visits with Child, and did not provide CYF with her work schedule. *See* Trial Ct. Op. at 4, 8; *see also* N.T., 8/1/25, at 21-22, 33-34, 62-64. Dr. Lobb testified that he conducted a psychological evaluation of Mother. *See* Trial Ct. Op. at 13; *see also* N.T., 8/1/25, at 41-42. Dr. Lobb also testified that he was unable to perform a bonding evaluation of Child and Mother because Mother either cancelled or failed to show up for scheduled appointments on three separate occasions. *See* N.T., 8/1/25, at 49-50. Ms. Stewart testified that Mother did not provide documentation that she ever engaged in individual therapy or completed genetic testing. *Id.* at 34, 56-57.

Dr. Watkinson testified that she had treated Child since October of 2023 and that Child had an average of two medical appointments a month. *See id.* at 11, 19. Dr. Watkinson explained that Child had, *inter alia*, a complex cardiac defect, obstructive sleep apnea, and an oral aversion. *Id.* at 11. Dr. Watkinson testified that Child was nonverbal, that is, "she cannot communicate with words." *Id.* at 12-13. Due to her medical conditions, Child required "ongoing cardiac appointments, . . . procedures, . . . [and] G

tube feed[ing]s to be administered multiple times a day by a trained caregiver." *Id.* at 12. Dr. Watkinson explained that Child was medically stable but had chronic medical issues that were well-managed by H.G., Child's foster mother. *Id.* at 13-16. Dr. Watkinson testified that Mother had attended one of Dr. Watkinson's in-person appointments and one virtual appointment with Child, and then another appointment with Dr. Watkinson's colleague. *Id.* at 14. At the in-person appointment Mother attended with Dr. Watkinson, Mother received instruction on how to use a G tube pump for Child's feedings. *Id.* at 14-15. Ms. Stewart and Ms. Vaughn testified that, during the times they worked on Child's case, Mother rarely if ever attended any of Child's medical appointments. *See* N.T., 8/1/25, at 34, 63.

Describing Child's bond with Foster Parents, Ms. Stewart testified that Child was "thriving" and had a "strong bond" with Foster Parents and Ms. Vaughn testified that Foster Parents met Child's "educational, psychological, and developmental needs, and were a pre-adoptive resource." N.T., 8/1/25, at 24, 37-39, 49, 65-66. Addressing Child's bond with Mother, Ms. Noss testified that Mother's contact with Child consisted of nine in-person visits and one or two video calls over the course of Child's dependency case. *See* Trial Ct. Op. at 23; *see also* N.T., 8/1/25, at 21-22, 25-26. No other evidence was presented addressing the strength or quality of Mother's bond with Child. *See* Trial Ct. Op. at 23.

On August 5, 2025, the trial court entered an order terminating Mother's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(2), (a)(5), (a)(8), and (b).

- 4 -

Mother filed a timely notice of appeal and both Mother and the trial court complied with Pa.R.A.P. 1925(a).

On appeal, Mother raises the following claims:

1. Did the trial court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. §[§] 2511(a)(2), (5), and (8)?

2. Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of Child pursuant to 23 Pa.C.S. § 2511(b)?

Mother's Brief at 6 (some formatting altered).

Mother claims that CYF presented insufficient evidence to establish grounds for termination. *Id.* at 22. Specifically, Mother argues that she remedied the conditions that led to Child's removal because she received training on how to operate Child's G tube feeding pump and attended three of Child's medical appointments. *Id.* at 23 (citations omitted). Mother notes that she underwent a psychological evaluation and IQ testing and, during the evaluation process, she informed the evaluator that "she understood [Child] has numerous health complications that need to be paid close attention to." *Id.* at 24 (citation omitted). Mother contends that the trial court abused its discretion when it determined that Mother did not complete her court-ordered goals and, further, when it found that Mother would not be able to complete the goals within a reasonable period of time. *Id.* at 23. Mother claims that

the "evidence clearly shows that Mother was able to provide essential parental care to [Child]." *Id.* at 25.

Mother claims that the trial court also erred in concluding that termination best met the needs and welfare of Child, arguing that there was insufficient evidence that "a bond does not exist between [Child] and Mother." *Id.* at 27. Mother contends that she "loves [Child] and has much to offer for [Child's] benefit" and that the "relationship between Mother and [Child] adds value to their lives." *Id.* at 27-28.

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re H.H.N.*, 296 A.3d 1258, 1263 (Pa. Super. 2023) (citations omitted); *see also In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (explaining that "the trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence" (citation omitted and some formatting altered)).

> Termination of parental rights is governed by § 2511 of the Adoption Act[, 23 Pa.C.S. §§ 2101-2938]. Subsection (a) provides eleven enumerated grounds describing particular

conduct of a parent which would warrant involuntary termination. In evaluating whether the petitioner proved grounds under § 2511(a), the trial court must focus on the parent's conduct and avoid using a balancing or best interest approach. If the trial court determines the petitioner established grounds for termination under § 2511(a) by clear and convincing evidence, the court then must assess the petition under § 2511(b), which focuses on the child's needs and welfare.

*In re M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022) (citations omitted and some formatting altered); *see also Q.R.D.*, 214 A.3d at 239 (explaining that if "the court determines the parent's conduct warrants termination of his or her parental rights, the court then engages in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child" (citation omitted and formatting altered)).

The Adoption Act provides in relevant part:

**(a)** **General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings,

income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to Subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We need only conclude that the petitioner established grounds for termination as to one subsection of Section 2511(a), as well as that termination would serve Child's needs and welfare under Section 2511(b), to affirm a decree terminating parental rights. *See In re K.T.*, 296 A.3d 1085, 1105 (Pa. 2023).

Here, the record supports the trial court's findings that Mother did not complete her court-ordered goals in order to reunify with Child and, further, that Mother did not have the capacity to provide essential parental care for Child. *See* N.T., 8/1/25, at 33-35, 62-65. The record reflects that Child required multiple G tube feedings a day performed by a caregiver with up-to-date training. *See id.* at 12, 34. Prior to Child's removal, while Mother had family visiting from Florida she failed to send Child to medical daycare and instead provided inaccurate G tube feedings to Child herself. *See id.* at 32. After Child's dependency adjudication, Mother received one training and was ordered to continue training on how to use the G tube device but did not engage in any additional training to provide for Child's specific medical feeding needs. *See id.* at 14-15, 33-34. Further, the record contains no evidence that Child shares a bond with Mother, whereas Child shares a strong bond and is thriving in the care of Foster Parents. *See id.* at 23-26, 37-38, 49, 65-66.

Accordingly, the record supports the trial court's conclusion that CYF met its evidentiary burden to establish grounds to terminate Mother's parental rights under Section 2511(a)(2) and that termination best served Child's needs and welfare pursuant to Section 2511(b). *See H.H.N.*, 296 A.3d at 1263; *see also Q.R.D.*, 214 A.3d at 239; *M.E.*, 283 A.3d at 830. Therefore, we affirm.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/26/2026